ment of multi-judge review should be docketed in the first instance in the district courts.

Transferring jurisdiction over enforcement of nonreviewable orders to district courts would relieve the courts of appeals of an assignment which, although not a major factor in their workload, nevertheless consumes time better allocated to the essential role of appellate review. At a time when overworked courts of appeals are struggling with ever-increasing caseloads, even a slight reduction in the matters assigned to them can help.[1]

Clearly a solution lies in legislative changes. However, in the meantime, courts of appeals should not forego the opportunity for legitimate self-help when the occasion arises. I believe this case is an example of a situation when this court should take that course. The public interest would best be served by referring this petition to the bankruptcy court. I dissent from the majority's decision not to do so.

**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION and Lieutenant
Otto J. Binker**

**v.**

**COMMONWEALTH OF PENNSYLVA-
NIA; Pennsylvania State Police; and
Daniel F. Dunn, Commissioner of the
Pennsylvania State Police.**

**Appeal of Lieutenant Otto J. BINKER
and Equal Employment Opportunity
Commission.**

Nos. 86–5807, 86–5902.

United States Court of Appeals,
Third Circuit.

Argued June 18, 1987.

Decided Sept. 21, 1987.

Rehearing and Rehearing En Banc
Denied Oct. 19, 1987.

---

John L. Heaton, Victor P. Stabile (argued), Dilworth, Paxson, Kalish & Kauffman, Harrisburg, Pa., for appellant Lieutenant Binker.

Gale B. Black (argued), Office of Gen. Counsel, Washington, D.C., for appellant E.E.O.C.

Joseph S. Rengert (argued), Office of Chief Counsel, Pennsylvania State Police, Harrisburg, Pa., for appellees.

Before SEITZ, MANSMANN, Circuit Judges, and BISSELL, District Judge.[*]

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Lieutenant Otto J. Binker and the Equal Employment Opportunity Commission (EEOC) appeal from the final order of the district court denying their motion for a permanent injunction. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

Pennsylvania law requires all state police officers to retire at age sixty. 71 P.S. § 65(d) (Purdon Supp.1987). Lieutenant Binker filed this action to prevent his imminent retirement from the Pennsylvania State Police (PSP) pursuant to the mandatory retirement law. Binker claimed that the law violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1982) (ADEA),[1] and the equal protection clause of the United States Constitution. U.S. Const. amend. XIV. Shortly thereafter, the EEOC brought an action seeking injunctive relief and backpay for all persons adversely affected by the law. The actions were consolidated in May 1983.

In their defense, the Commonwealth and the PSP argued that the age limitation was a lawful bona fide occupational qualification (BFOQ).

In October 1984, the district court entered final judgment in favor of defendants. *EEOC v. Pennsylvania,* 596 F.Supp. 1333 (M.D.Pa.1984). The district court determined that "the PSP is a paramilitary organization where the mandatory retirement age is reasonably necessary to the operation of a safe and efficient law enforcement organization." *Id.* at 1343. Further, the court found that substantially all PSP officers over age 60 cannot safely and efficiently perform the necessary physical duties of the job and that it would be impractical to determine which officers could perform the job of PSP trooper.

Binker and the EEOC appealed the decision. Prior to oral argument, the Supreme Court decided *Johnson v. City of Baltimore,* 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985), and *Western Air Lines v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). *Criswell,* in particular, explained the parameters of the BFOQ defense and adopted the standard developed

---

[*] The Honorable John W. Bissell of the United States District Court for the District of New Jersey, sitting by designation.

[1] In October 1986, Congress enacted the Age Discrimination in Employment Amendments of 1986, P.L. No. 99–592, 100 Stat. 3342, which, *inter alia,* provide as follows:

It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of [the ADEA].

29 U.S.C.A. § 623(i) (West Supp.1987). This provision became effective on January 1, 1987, and does not apply to causes of action arising under the ADEA before that date. 29 U.S.C.A. § 623 note (West Supp.1987). Because Binker filed this action in 1983, the provision is inapplicable here. We also note that the provision is self-repealing and will cease to be effective on December 31, 1993. *Id.*

by the Fifth Circuit in *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir. 1976). Because it appeared that the district court had assumed that good health and physical fitness are reasonably necessary job qualifications, we remanded this action for reconsideration and additional particularized factual findings in light of the Supreme Court's then recent pronouncements. *EEOC v. Pennsylvania,* 768 F.2d 514 (3d Cir.1985).

On remand, the district court allowed the parties to present additional testimony and evidence. The district court again ruled in favor of defendants. *EEOC v. Pennsylvania,* 645 F.Supp. 1545 (M.D.Pa.1986). It found that good health, physical fitness, strength, and dexterity are reasonably necessary to the essence of PSP business. The court determined that eleven physical dimensions are required to perform the job of state police officer: eye-hand coordination, manual dexterity, finger dexterity, reaction time, absolute strength, relative strength, absolute power, relative power, aerobic endurance, anaerobic-aerobic endurance, and absolute muscular endurance. The district court further found that there is a dramatic age-related effect on these capacities, and that there must be extensive and expensive medical screening for hidden coronary problems in officers over 60 before they can be tested for these capacities.

The district court held, therefore, that age was a legitimate proxy for the BFOQs of good health, physical strength, endurance and dexterity because substantially all officers over age 60 have a moderately high or higher risk of developing cardiovascular disease, the absence of which is a reasonably necessary BFOQ. In the alternative, the district court held that it would be impossible or impractical to treat officers over 60 on an individualized basis because they must pass initial screening before being tested for certain physical capacities and officers should not be physically tested if they have even mild hypertension or poor cardiac function, conditions that are common in people over 60. In any event,

the court found that the cost of screening and testing officers in the highest age category would be prohibitive. This appeal followed.

## II.

Appellants contend that the district court erred in finding that good health, physical fitness, strength and dexterity are bona fide occupational qualifications reasonably necessary to the essence of PSP business. We review factual findings under the clearly erroneous standard.[2]

Section 4(a)(1) of the Age Discrimination in Employment Act makes it unlawful for a covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1982). A state or a political subdivision or agency thereof is a covered employer under ADEA. 29 U.S.C. § 630(b) (1982). The proscription against age-based employment discrimination protects individuals between the ages of 40 and 70. 29 U.S.C. § 631(a) (1982).

The statute, however, recognizes an exception when the age classification serves "as a necessary proxy for neutral employment qualifications essential to the employer's business." *Western Air Lines v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 2750, 86 L.Ed.2d 321 (1985). The statute thus tolerates otherwise unlawful age discrimination "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1) (1982). The BFOQ defense " '[is] in fact meant to be an extremely narrow exception to the general prohibition' of age discrimination." *Criswell, supra,* 105 S.Ct. at 2751, quoting *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977).

In *Criswell,* the Supreme Court adopted a two-prong test for determining whether an employer has established the BFOQ defense. First, the employer must demon-

**2.** Our treatment of this issue makes it unnecessary to address appellants' other challenges.

strate that the qualification used to justify the age requirement is reasonably necessary to the essence of its business. *Criswell, supra,* 105 S.Ct. at 2751. Second, the employer must show that it is compelled to rely on age as a proxy for this qualification by establishing either that all or substantially all adults over a particular age lack the qualification or that it is impossible or impractical to deal with the older employees on an individualized basis. *Id.*

■ While the ADEA does not require perfect monitoring and maintenance of a particular qualification at all age levels, it does bar selective age-based enforcement of health and fitness requirements. *Cf. Trans World Airlines Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (if airline grants some disqualified captains the privilege of bumping less senior flight engineers, it may not deny this opportunity to others because of their age). The PSP admitted that it presently has no mandatory minimum fitness standards and that its new maintenance program is only "evolving" towards such standards.

■ As to the first prong of the BFOQ defense, the district court found that good health, physical fitness, strength, and dexterity are qualifications reasonably necessary to the essence of PSP business, namely, safety. The court did not, however, indicate what minimum level of these traits is necessary to the performance of state police trooper duties.

The district court found that in 1982 the PSP began to develop a health and physical fitness training program for its members. The research phase is complete and the program is now in the developmental phase. The district court further found:

> In the future, the department will undertake quarterly assessments of the physical fitness of its members, will write exercise prescriptions for each member, and will provide education in stress management, nutrition and weight control. *Eventually, mandatory fitness standards will be implemented.*

*EEOC v. Pennsylvania, supra,* 645 F.Supp. at 1549 (emphasis added).

The district court found that, prior to the new program, PSP monitored health and fitness on a limited basis. An officer was required to report physical or medical deficiencies that might affect his or her performance. The PSP could then require complete medical diagnosis and prognosis or a physical examination. Since 1974, each PSP member has been required to undergo semi-annual monitoring of weight and other medical deficiencies and submit proposed treatment programs for problems other than weight.

The district court's findings primarily concern the *health* of PSP officers, not their fitness levels. The factual findings supporting the district court's treatment of the first prong of the BFOQ defense do not include the determination that the department in fact presently requires all state troopers to maintain a minimum level of health and fitness. Nor would the record support such a finding. This factual deficiency convinces us that the district court committed clear error in concluding that the PSP had demonstrated a bona fide occupational qualification reasonably necessary to its business. *See Heiar v. Crawford County, Wisconsin,* 746 F.2d 1190 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985) (determination that mandatory retirement is not reasonably necessary to essence of sheriff's department's business supported by absence of fitness monitoring). *But see EEOC v. Missouri State Highway Patrol,* 748 F.2d 447 (8th Cir.1984), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (physical fitness program of questionable relevance to BFOQ defense). Until minimum standards are developed, implemented and enforced, the PSP cannot justify its mandatory retirement law by relying on good health and physical conditioning as BFOQs reasonably necessary to PSP business.

In *EEOC v. New Jersey,* 631 F.Supp. 1506 (D.N.J.1986), *aff'd,* 815 F.2d 694 (3d Cir.1987), New Jersey's age 55 mandatory retirement law for state police officers was upheld against an ADEA challenge. That district court, however, specifically found

that all members of the New Jersey State Police are subject to mandatory fitness requirements and are sanctioned for noncompliance. In the case at bar, the PSP does not presently require all officers to meet minimum fitness standards; rather such standards will only be implemented "eventually," *supra.* *EEOC v. New Jersey* is, therefore, distinguishable from the present case in this critical respect.

■ In holding that the district court committed clear error in finding that good health, physical fitness, strength, and dexterity are BFOQs reasonably necessary to the essence of PSP business, we reject the analysis in *EEOC v. City of East Providence,* 798 F.2d 524 (1st Cir.1986). The *East Providence* court wrote:

> The ADEA was intended to be used as a shield to protect older employees from discriminatory employment practices, not as a sword to compel employers concerned with public safety to perfect their procedures for assuring maximum physical fitness of younger employees.

*Id.* at 529. The court stated that in establishing a mandatory retirement law to achieve its fitness goal, the city could rely on its belief that most younger officers will meet the necessary minimums. *Id.* at 529, n. 4.

We disagree. We believe this is precisely the kind of employment discrimination that Congress sought to eliminate by enacting the ADEA. Before a characteristic can be a reasonably necessary BFOQ, it must be a trait that the employer at least attempts to require of employees of all ages. In any event, the district court did not find that most younger officers possess the purported BFOQs. And, in fact, the record suggests the contrary.

### III.

Accordingly, we will vacate the judgment of the district court and remand for proceedings not inconsistent with this opinion.